| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| **JOEL VARGAS-MEZA,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss Indictment for Violation of the Defendant's Speedy Trial Rights Under the Sixth Amendment (Doc. No. 12). The Government has responded in opposition to the motion. (Doc. No. 15). For the reasons stated herein, the motion is denied.

## I.  FACTUAL BACKGROUND

On June 18, 2021, CMPD Narcotics Task Force Officers arrested Defendant for, among other charges, Conspiracy to Traffic in Methamphetamine, Possession with Intent to Manufacture/Sell/Deliver Methamphetamine, and Trafficking in Methamphetamine. Most of these charges are still pending. On July 1, 2021, an ICE detainer was lodged against him. On July 20, 2021, a federal grand jury returned a true bill of indictment against Defendant, charging him with illegal reentry of a previously deported alien.

Defendant had remained in state custody as a result of charges from his June 18, 2021 arrest. On August 2, 2023, the Government filed a writ of habeas corpus ad prosequendum, and Defendant's initial appearance hearing occurred on August 29, 2023. Before his June 18, 2021 arrest by CMPD, defendant's criminal history include the following convictions:

• Operating Motor Vehicle Without Valid License and Failure to Yield at Stop Sign,

1

Dodge City, Kansas Municipal Court, May 25, 2004, $335 fine

• Operating Motor Vehicle Without Valid License, Liberal, Kansas, October 2, 2014, 12 months suspended probation and $320 fine

• Interference with Law Enforcement Officer and Concealing/Destroying Evidence, Seward County, Kansas, January 12, 2016, 6 months confinement, 12 months suspended probation, $200 fine

• DUI, Transporting an Open Container, Operating Motor Vehicle Without Valid License, Ford County, Kansa, May 19, 2016, 90 days confinement, 12 months probation, $1450 fine

• Illegal Reentry, United States District Court for the Western District of Teaxas, El Paso Division, September 6, 2017, 5 months of imprisonment, one-year supervised release

• Illegal Reentry, United States District Court for the Western District of Texas, El Paso Division, February 28, 2018, 15 months of imprisonment, two years supervised release

Regarding Defendant's immigration history, he has been removed from the United States on three occasions, and he received the benefit of a voluntary return once.

Defendant's criminal trial is set on this Court's November trial calendar. Defendant now brings the pending motion to dismiss his indictment based on his contention that his Sixth Amendment speedy trial rights have been violated.

**II.     DISCUSSION**

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial...." U.S. Const. amend VI. "Like most constitutional rights, the right to a speedy trial is not absolute; it yields in the face of compelling circumstances." United States v. Richardson, 780 F.3d 812, 817 (7th Cir. 2015). Moreover, as the Fourth Circuit recently

2

Case 3:21-cr-00186-MOC-SCR   Document 18   Filed 09/26/23   Page 2 of 7

noted in United States v. Villa, No. 20-4297, 2023 WL 3959405, at *5 (4th Cir. June 13, 2023), "[b]ecause the speedy-trial right is amorphous, slippery and necessarily relative, it is not defined by a fixed amount of time but instead is circumstance-dependent." In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court established a four-part balancing test to determine if a defendant's constitutional right to a speedy trial has been violated: (1) whether the delay before the defendant's trial is unreasonably long; (2) whether the government or defendant is more to blame for that delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether he suffered prejudice from the delay.

Here, applying the Barker factors, the Court finds no Speedy Trial Act violations occurred. As to the first Barker factor, the Speedy Trial Act requires federal action to apply, and this occurs when a defendant is being held to answer a federal, not state, charge. United States v. Woolfolk, 399 F.3d 590, 596 (4th Cir. 2005). Here, Defendant was initially held in custody because of the state drug charges against him, not because of the illegal reentry charge. Federal action against him did not begin until after the August 2, 2023, writ was filed, and he had his initial appearance on August 29, 2023. An immigration detainer was lodged against him on that same date. (Exhibit 3). Thus, Defendant's Sixth Amendment speedy trial rights arose on August 29, 2023. Defendant's trial is scheduled to commence in November 2023. Because the trial delay is less than 12 months, no prejudice is presumed, see Doggett v. United States, 505 U.S. 647, 651 (1992) (noting that a one-year delay is presumptively prejudicial). Defendant's dismissal motion could be denied on this basis alone. See United States v. Shealey, 641 F.3d 627, 634 (4th Cir. 2011).

Even if the Court assumes that Defendant's speedy trial right under the Sixth Amendment began when Defendant was indicted on July 20, 2021, this determination does not justify the

3

dismissal of the indictment. The Fourth Circuit has found no Sixth Amendment violations occurred in cases involving delays longer than the delay alleged in this one. United States v. Grimmond, 137 F.3d 823, 827 (4th Cir. 1998) (thirty-five months); United States v. Thomas, 55 F.3d 144, 149–50 (4th Cir. 1995) (two and a half years).

As to the second Barker factor, any delay is the fault of Defendant and not the Government. That is, Defendant's continuing criminal conduct is the primary reason for any delay in his federal prosecution. Had he not sold methamphetamine on June 18, 2021, state prosecutors would not have prosecuted him. Possibly, then, immigration authorities would not have learned about his unlawful reentry into the United States. The Fourth Circuit has acknowledged dual prosecutions such as the ones Defendant created for himself are a valid reason for a delay in starting a defendant's federal trial. See Grimmond, 137 F.3d at 828 (finding that delays are reasonable when a defendant has violated both state and federal laws because "at least one sovereign, and perhaps more, will have to wait its turn at the prosecutorial turnstile. Simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay."); see also United States v. Thomas, 55 F.3d 144, 150 (4th Cir. 1995) ("[T]he need to allow [the defendant] to be prosecuted by the State without interference . . . [is] an obvious reason for delaying [the defendant's] federal prosecution").

Moreover, the Government did not engage in an impermissible or vindictive tactic merely by allowing the state to prosecute Defendant first. In other words, contrary to Defendant's argument, the Government's failure to secure Defendant's appearance at an earlier time during his state court incarceration by writ of habeas corpus ad prosequendum does not indicate that the Government engaged in any impermissible or vindictive tactic. See United States v. Watford, 468 F.3d 891, 905 (6th Cir. 2006) (stating that even if the Government's sole reason for

4

Case 3:21-cr-00186-MOC-SCR   Document 18   Filed 09/26/23   Page 4 of 7

proceeding with its prosecution of the already-pending charges against the defendant was to obtain federal "backup time," this alone would not have constituted an impermissible or vindictive tactic). This Barker factor weighs in favor of the Government.

As to the third Barker factor, Defendant's initial appearance was on August 29, 2023, and, on September 1, 2023, he asserted his speedy trial right with the contemporaneous filing of this motion. Under the Court's standing orders and the tolling of the speedy trial clock, he will be tried in a timely fashion during the Court's November 2023 trial term. Thus, this Barker factor is neutral.

As to the final Barker factor, Defendant argues that he has been prejudiced in the various ways: the Government has gained significant tactical advantages at trial and sentencing; the Government circumvented Rule 5 protections, as Defendant was not brought to federal court until after the filing of the writ; Defendant was denied Defendant's meaningful representation; he was not informed about the detainer against him; and he suffered from prolonged, oppressive custody without the possibility of bond because of the federal arrest warrant and detainer. Here, Defendant is merely complaining about the realities a defendant faces with contemporaneous state and federal prosecutions. While the Government has an interest in the integrity and fairness of criminal proceedings, the government is not required to "save the Defendant from himself." United States v. Spears, 159 F.3d 1081, 1086 (7th Cir. 1998).

Defendant asserts that he has suffered "prolonged, oppressive custody" because of a federal arrest warrant and detainer. Defendant cannot blame the federal government for any alleged prejudice he has suffered while in state custody. Defendant's current incarceration started with his June 18, 2021, arrest for methamphetamine trafficking. State authorities arrested, charged, and are prosecuting him for that criminal conduct. Defendant jeopardized and lost his

5

freedom when he returned to the United States and sold drugs, not because of any action by the federal government. Accord United States v. Grimmond, 137 F.3d 823, 830 (4th Cir. 1998) ("When, as here, a defendant is lawfully incarcerated for reasons not related to the pending charges and makes no credible showing that either his present or potential sentence will be substantially affected by the delay, we hold that there is simply no way the pretrial incarceration can be deemed oppressive.") (citation omitted).

Next, even if Defendant may receive a longer sentence with the state prosecution going first, this is not a form of prejudice against Defendant. "The Sixth Amendment right to a speedy trial does not give a defendant a constitutional right to the more advantageous sequence in . . . sentencing decisions." United States v. Richardson, 780 F.3d 812, 820 (7th Cir. 2015). As Defendant recognizes, 18 U.S.C. § 1326(b) imposes higher maximum penalties for previously removed persons who unlawfully reenter the United States after they were deported following certain types of convictions. See also U.S.S.G. § 2L1.2(b)(3). Congress enacted these provisions to address recidivism and deter those with certain criminal histories from illegally reentering this country. See United States v. Osorto, 995 F.3d 801, 814 (11th Cir. 2021), cert. denied, 142 S. Ct. 470 (Nov. 8, 2021) (rejecting constitutional challenges to this sentencing provision and noting that "Congress has plenary authority to control immigration, including by defining criminal immigration offenses"). Because of his multiple illegal reentries and his criminal history, Defendant is exactly the type of defendant this sentencing provision aimed to deter. The fact that he may now face a longer federal sentence is due to Defendant's conduct, not the Government's.

Finally, in his motion, Defendant does not even attempt to allege that exculpatory evidence for his illegal reentry by a felon defense exists or has been lost. Rather, as the Government notes, his vague and general allegations of prejudice do not make sense in the

6

Case 3:21-cr-00186-MOC-SCR   Document 18   Filed 09/26/23   Page 6 of 7

context of illegal reentry prosecutions. Thus, Defendant has failed to show prejudice. This <u>Barker</u> factor weighs in favor of the Government.

### III. CONCLUSION

In sum, after considering the four <u>Barker</u> factors, this Court denies Defendant's dismissal motion.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Indictment for Violation of the Defendant's Speedy Trial Rights Under the Sixth Amendment (Doc. No. 12), is **DENIED**.

.

Signed: September 26, 2023

Max O. Cogburn Jr
United States District Judge